UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

EAST COAST VENTURE CAPITAL, INC.,

                Plaintiff,        :

       -against-             :

JP MORGAN CHASE BANK, N.A. and JAMES ASARO,  :

                       :

              Defendants.
------------------------------------------------------------------- x

09 CV 05473 (JGK)(JCF)

**DECLARATION OF ALAN
H. SCHEINER IN SUPPORT
OF MOTION TO DISMISS**

ALAN H. SCHEINER, pursuant to 28 U.S.C. § 1746, hereby declares as follows:

1.     I am Counsel at the law firm of Levi Lubarsky & Feigenbaum LLP, the attorneys for the defendants in this action.

2.     Attached as Exhibit A is plaintiff's Amended Complaint in this action dated May 20, 2009.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on July 20, 2009, New York, New York.

_____
ALAN H. SCHEINER

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------------X    Index No.: 600410/09

EAST COAST VENTURE CAPITAL INC.,
                                                                **AMENDED**
                                Plaintiff,                       **COMPLAINT**

            -against-

JP MORGAN CHASE BANK N.A. and
JAMES ASARO

                                Defendants.
------------------------------------------------------------------------X

        Plaintiff East Coast Venture Capital Inc. (referred to as the "Plaintiff" or the "Company")

brings this action against JP Morgan Chase Bank N.A. ("Defendant Bank" or "Chase") and James

Asaro ("Asaro"), and alleges as follows:

                                **PARTIES**

        1.      Plaintiff is a corporation organized under the laws of the State of Delaware and is

authorized to do business in the State of New York, with its principal place of business at 30 East

29th Street, New York, New York 10016.

        2.      Since 1986, Plaintiff has been licensed by the U.S. Small Business Administration

("SBA") as a Specialized Small Business Investment Company ("SSBIC") under section 301(d) of

the Small Business Investment Act of 1958, and is currently so licensed.

        3.      Since December 31, 2001, the Company has been certified as a Community

Development Entity (a "CDE") by the Community Development Financial Institutions Fund of the

U. S. Treasury Department, and is currently so certified.

        4.      The Company's business is and has been to provide loans and/or equity financing

                                    1

to small and medium sized businesses or persons who qualify under SBA regulations as socially or economically disadvantaged persons or to entities which are at least 50% owned by such persons.

5.      Since 1986, the Company has on numerous occasions received leverage financing from the SBA, and has on numerous occasions received rollovers of leverage financing from the SBA.

6.      The Company is and has been in good standing with the SBA.

7.      Upon information and belief, Defendant Bank is a banking institution organized under the laws of the United States.

8.      Upon information and belief, Defendant Bank has several subsidiaries and/or controlled affiliates, including J.P. Morgan Partners SBIC (formerly known as Chase Venture Capital Associates, LLC) and J.P. Morgan Partners (23A SBIC), L.P. (formerly known as CB Capital Investors, LLC), that are SBIC's (the "Chase SBIC's").

9.      Upon information and belief, Defendant Bank acts as the agent of the SBA in handling "draw requests" by SBICs, and accordingly, is intimately aware of the SBA requirements for proper documentation of such "draw requests."

10.      Since the repeal of the Glass-Steagall Act in 1999 and the merger of J.P. Morgan and Chase Manhattan Bank in 2000, Defendant Bank, along with its affiliates, has been engaging in aggressive, anti-competitive and unprofessional tactics vis-à-vis its competitors in its efforts to dominate the financial markets.

11.      Prior to its 2004 merger with Bank One, Defendant Bank marketed itself as having subsidiaries and/or controlled affiliates that were SBICs and CDEs.

12.      Upon information and belief, Defendant Bank has several subsidiaries and/or controlled affiliates, including Chase Community Development Corporation and Chase New

2

Markets Corporation, that are certified as CDEs ("Chase CDEs").

13.     Upon information and belief, Asaro is employed by Defendant Bank as a branch manager.

## NATURE OF CASE

14.     This case arises out of (i) Defendant Bank's actions and inactions in its capacity as the banking institution in which Plaintiff deposited three million one hundred thousand two hundred and fifty dollars ($3,100,250.00) of new equity for its Specialized Small Business Investment Company operations ("Plaintiff Funds") on December 6, 2007; and (ii) Defendants' refusal to issue a bank confirmation letter to the SBA in conformity with the SBA guidelines to confirm Plaintiff's increase in capital in the amount of three million one hundred thousand dollars ($3,100,000) by virtue of its deposit of Plaintiff Funds with Defendant Bank on December 6, 2007, which confirmation Defendant Bank and its predecessors (including, for example, Chemical Bank and Chase Manhattan Bank) regularly issued in the past.

15.     As the SBA's official agent for SBIC draw requests against new leverageable capital, Defendant Bank is intimately familiar with the SBA's requirements for SBIC financing, including the requirements that an SBIC provide file SBA Form 415-C and a bank letter confirming the increase in leverageable capital.

16.     For many years, Defendant Bank (and its predecessors) has provided Plaintiff with bank confirmation letters in the ordinary course of business, confirming Plaintiff's Regulatory Capital to the satisfaction of the SBA.

17.     Upon information and belief, Defendant Bank provides satisfactory confirmation letters to the SBA in the ordinary course of business, confirming the Regulatory Capital of the Chase SBICs.

18.     The form of the bank confirmation letter requested by the SBA was as follows: "This certifies that on _____ or between _____ and _____ deposits totaling $ _____ or more have been made to the account of *Sample SBIC*. This bank has no right, written or otherwise, to restrict the use of or the withdrawal of funds from this account, or to apply the funds in this account against any indebtedness owed to it; and it has no knowledge of any agreements with other parties restricting the right of withdrawal from, or concerning the use of, the funds in this account."

## BACKGROUND

19.     Plaintiff, as an SSBIC, is eligible to obtain leverage debenture financing from SBA based upon three (3) times its Regulatory Capital.

20.     The extent of Plaintiff's leveraging capacity is dependent on the amount of its Regulatory Capital, as determined under the rules and regulations of the SBA.

21.     Primary among the SBA requirements are that new Regulatory Capital must be free of any encumbrances or claims.

22.     The SBA rules and regulations also require that Regulatory Capital must be deposited in bank accounts that are covered by FDIC insurance ("Qualifying Accounts").

23.     To the extent that the balance in a Qualifying Account exceeds a banking institution's insured amount, an SBIC may deposit such excess Regulatory Capital only with an institution that is "well capitalized" as defined by FDIC regulations.

24.     Upon information and belief, Defendant has many banking customers that are SBICs.

4

25.     Upon information and belief, Defendant Bank, in the ordinary course of business, furnishes bank confirmation letters to the SBA confirming the Regulatory Capital of its own Chase SBIC's that comply with the specifications of the SBA.

26.     Upon information and belief, Defendant Bank, in the ordinary course of business, furnishes bank confirmation letters to the SBA confirming the Regulatory Capital for its SBIC customers that comply with the specifications of the SBA.

27.     Plaintiff and Defendant Bank have had a long term business relationship (including various incarnations of Defendant Bank and its predecessors) going back as far as the early 1990s.

28.     Defendant had actual knowledge that Plaintiff was an SSBIC.

29.     Since 1995 or earlier, Plaintiff deposited with Defendant Bank funds that Plaintiff counted towards its Regulatory Capital.

30.     Since 1995 or earlier, Defendants (and its predecessor banks) consistently provided Plaintiff with the confirmation letters that the SBA required or requested.

31.     Defendant Bank markets itself as providing superior service, support and advice to their customers and to the communities they serve.

32.     Defendant Bank's marketing materials tout that it expends substantial resources to build relationships with its customers, and places great value on the level of customer confidence, goodwill and its business reputation.

33.     Upon information and belief, in 2007, as in prior years, Defendant Bank encouraged its employees, including Defendant Asaro (Vice President and Branch Manager), Jonathan E. Rynsky (Vice President) ("Rynsky"), Sachin Kumar (Vice President) ("Kumar"), Guillaume N. Loka ("Loka") (Vice President), and Philip Davis (Vice President) ("Davis")

(collectively referred to as the "Chase Employees") to open as many new bank accounts as possible.

34.     Upon information and belief, Defendant Bank imposed a quota or target of a minimum of 25 new checking accounts and 10 new savings accounts to be opened monthly by its employees.

35.     Upon information and belief, Defendant Bank based a portion of its employees' compensation on the number of new accounts they opened.

36.     Chase Employees pressured Plaintiff, its principals and its affiliates to open new bank accounts, even though new accounts were unnecessary and redundant.

37.     Chase Employees had numerous meetings with Plaintiff in 2006 and 2007, attempting to solicit additional business from Plaintiff and to persuade Plaintiff, its principals and affiliates to open new bank accounts with Defendant Bank.  Specifically, Plaintiff met with Loka on December 13, 2006 and June 7, 2007; with Kumar on November 6, 2007, December 6, 2007 and December 26, 2007; and with Defendant Asaro on December 6, 2007.

38.     Plaintiff was amenable to the Chase Employees' requests to open new accounts with Defendant Bank to benefit the Chase Employees, predicated on the stated conditions that Defendant Bank would (a) agree to cooperate with all SBA requirements as they had done in the past; and (b) refer to Plaintiff minority-owned small business financing opportunities that Chase and Chase's affiliates (including the Chase SBIC's) were not interested in pursuing, but that Plaintiff might be interested in pursuing (based on the qualification criteria Plaintiff provided to Chase).

39.     In December, 2007, Plaintiff agreed to open one or more new accounts with Defendant Bank predicated on the above-referenced stated conditions.

40.     The Chase Employees were at all times aware that the nature of Plaintiff's

business was to provide debt and/or equity financing to small and medium sized businesses or persons who qualify under SBA regulations as socially or economically disadvantaged persons or to entities which are at least 50% owned by such persons.

41.  The Chase Employees were at all times aware that Plaintiff is an SSBIC subject to the rules and regulations of the U.S. Small Business Administration.

42.  Prior to 2007, Defendant Bank always provided bank confirmation letters to the SBA confirming Plaintiff's Regulatory Capital, using language acceptable to the SBA.

43.  Chase Employees on numerous occasions expressed and marketed themselves and the Defendant Bank to Plaintiff as aware of, and experts in, the rules and regulations imposed by SBA on SSBIC's and that they and Defendant Bank would handle the Plaintiff Funds deposited with Defendant Bank in accordance with SBA rules, provide verification as required and promptly respond to any SBA requests.

44.  Asaro and other Chase Employees further represented that aside from their own general awareness of the SBA rules and regulations for SBIC's and SSBIC's, Defendant Bank had specific knowledge of the same because Defendant Bank owned the Chase SBIC's as referred to in paragraphs 8-12 above.

45.  Defendant Bank's specific knowledge as to the SBA rules and regulations, as referred to above, was a material inducement for Plaintiff to bank with Defendant Bank.

46.  Plaintiff relied on the various representations made by Defendant Bank and its employees as to their knowledge of the SBA rules and regulations.

47.  Prior to 2007, Chase and/or its predecessor bank's employees had performed and complied with all SBA requests without issue and in a swift fashion.

48.  Chase Employees repeatedly assured Plaintiff that they had no problems at all

7

assisting Plaintiff in accordance with SBA requirements, and assured Plaintiff that they (and the Bank) were knowledgeable in the SBA requirements, including the issuance of confirmation letters with respect to Plaintiff's funds.

49.     On December 5, 2007, in reliance on Defendants' representations, Plaintiff opened two new accounts with Chase, with account numbers ending in 5291 and 2140 (the "New Accounts").

50.     On December 6, 2007, Plaintiff deposited with Defendant Bank the sum of three million one hundred thousand two hundred and fifty dollars ($3,100,250.00) (the "Plaintiff Funds") into the account ending in 5291.

51.     The Plaintiff Funds were not subject to any encumbrances, restrictions, or third-party claims.

52.     The Plaintiff Funds were deposited at Defendant Bank's banking branch at 386 Park Avenue South, New York, New York 10016.

53.     On December 6, 2007, Plaintiff expressly informed Defendant Bank and the Chase Employees, including Kumar and Defendant Asaro, of its intention that the Plaintiff Funds deposited with Defendant Bank qualify as Regulatory Capital for SBA purposes, in order to leverage its financing capacity.

54.     The Chase Employees acknowledged Plaintiff's intention that the Plaintiff Funds deposited with Defendant Bank qualify as Regulatory Capital for SBA purposes, in order to leverage its financing capacity.

55.     On December 20, 2007, Plaintiff filed SBA Form 415C (Amendments to License Application), certifying that it had increased its capital by three million one hundred thousand dollars ($3,100,000).

56.     On December 21, 2007, Plaintiff's independent accountant, Melvyn Ward, P.A., 2 Village Court, Hazlet, N.J. 07730, issued a confirmation letter to the SBA certifying that Plaintiff had increased its capitalization by three million one hundred thousand dollars ($3,100,000) as of December 6, 2007.

57.     In and around December 2007, Defendants opened a new account on behalf of Plaintiff and in the name of Plaintiff without authorization or knowledge of the Plaintiff ("Unauthorized Account"), which was not a Qualifying Account.

58.     Neither Plaintiff nor any of its authorized employees executed any applications, corporate resolutions or other documentation to open the Unauthorized Account.

59.     In and around December 2007, Defendants, without Plaintiff's authorization, transferred $2 million from Plaintiff's account to the Unauthorized Account.

60.     Beginning on or around December 26, 2007, Defendants, without Plaintiff's knowledge or consent, began investing funds in the Unauthorized Account.

61.     One result of Defendants' unauthorized transfers was that the Plaintiff was caused to have a check dishonored for insufficient funds.

62.     Prior to the opening of the New Accounts and the Unauthorized Account, Chase was aware that the Plaintiff's address was 30 East 29th Street, Suite 204, New York, New York 10016.

63.     Despite Chase's knowledge as described in the previous paragraph, Chase opened the New Accounts and Unauthorized Account using an address of 241 5th Ave, Room 302, New York, New York 1006, which was not the Plaintiff's address.

64.     In and around December 2007/January 2008, the SBA asked Plaintiff to obtain from Defendant Bank a bank confirmation letter to confirm the Plaintiff Funds deposited with

9

Defendant Bank on December 6, 2007 for purposes of Regulatory Capital.

65.     On or about January 7, 2008, Defendant Asaro sent a bank confirmation letter to the SBA to confirm the Plaintiff Funds deposited with Defendant Bank on December 6, 2007.

66.     On January 10, 2008 (prior to the SBA's receipt of Defendant Bank's January 7, 2008 letter), Plaintiff's SBA regulator, Fonda Stephens-Kelly, Office of SBIC Operations, Washington, D.C.("Stephens-Kelly") requested a bank confirmation letter from Defendant Bank in addition to the accountant's certification.

67.     During January 2008, the SBA received the Defendant Bank's bank confirmation letter; however the SBA responded that the January 7th confirmation letter did not satisfy the requirements of the SBA.

68.     On January 24, 2008 and January 28, 2008, the SBA forwarded sample language (the "SBA Language") that Defendant Bank was asked to use to confirm the Plaintiff Funds deposited with Defendant Bank.

69.     The SBA Language required by the SBA was as follows:

"This certifies that on _____ or between _____ and _____ deposits totaling $ _____ or more have been made to the account of *Sample SBIC*. This bank has no right, written or otherwise, to restrict the use of or the withdrawal of funds from this account, or to apply the funds in this account against any indebtedness owed to it; and it has no knowledge of any agreements with other parties restricting the right of withdrawal from, or concerning the use of, the funds in this account."

70.     Defendant Asaro informed Plaintiff that he personally would have

no problem issuing an acceptable bank confirmation letter to the SBA, however Defendant Bank's legal department refused to permit the use of the language required by the SBA.

71.    At Plaintiff's urging, Defendant Asaro contacted Stephens-Kelly directly in an effort to collaborate to resolve the confirmation letter language issues.

72.    On January 28, 2008, Stephens-Kelly informed Plaintiff that she was working with Defendant Asaro on appropriate confirmation letter language.

73.    In January 2008, Stephens-Kelly provided Defendant Asaro with redacted bank confirmation letters ("Alternative Language") actually written by Defendant Bank with respect to the Regulatory Capital of its Chase SBIC's and for Defendant Bank's other SBIC customers.

74.    The language in the aforementioned sample bank confirmation letters would have been considered acceptable by the SBA for purposes of confirming Plaintiff's Regulatory Capital increase.

75.    In spite of the fact that SBA was willing to work with Defendant Bank to craft acceptable language for its confirmation letter, from February 2008 through May 2008, Defendant Asaro and Defendant Bank did not respond to the SBA's request for an acceptable bank confirmation letter while they considered the request.

76.    Between February 2008 and June 2008 (and subsequently), Mr. Zindel Zelmanovitch, Chairman and CEO of Plaintiff, had several meetings with Chase Employees (including Mr. Asaro), in which Mr. Zelmanovitch threatened to pursue litigation against Defendant Bank for Plaintiff's lost business opportunities and lost income that were due to the Defendant Bank's actions and inactions – not to mention all other damages.  Specifically Mr. Zelmanovitch met with Defendant Asaro on May 1, 2008, May 20, 2008, and May 30, 2008; with Kumar on May

11

20, 2008, May 30, 2008 and June 27, 2008; and with Davis on June 6, 2008. Mr. Zelmanovitch also had subsequent meetings with these Chase Employees – specifically, with Defendant Asaro on August 25, 2008 and August 28, 2008; with Kumar on July 9, 2008; and with Davis on July 15, 2008 and August 19, 2008.

77.     On June 2, 2008, under the threat of litigation, Defendant Asaro finally produced a second bank confirmation letter to the SBA, which was forwarded to the SBA on June 9, 2008.

78.     On June 11, 2008, the SBA notified Plaintiff that the second bank confirmation letter provided by Defendants was rejected by the SBA because it did not contain either the Sample Language or the Alternative Language that Defendant Bank regularly provided for its Chase SBICs and the SBICs of other customers.

79.     Defendant Asaro's failure to use either the SBA Language or the Alternative Language in his letters to the SBA caused the Plaintiff Funds deposited with Defendant Bank to be ineligible as Regulatory Capital for SBA purposes.

80.     Plaintiff, as a result of Defendants' actions and inactions, could not use the Plaintiff Funds deposited with Defendant Bank as Regulatory Capital to their full leverageable capacity.

81.     Defendant Asaro's failure to use either the SBA Language or the Alternative Language in his bank confirmation letters to the SBA caused irreparable harm to Plaintiff's business.

82.     Plaintiff was unable to meet its prior funding commitments to various customers in its financing business, including: various Key Food supermarkets throughout New York; Associated Food Stores, based in Hewlett, New York; Hooper Group, Newark, New Jersey; Popeye's Group, Cleveland, Ohio; IPROCESS, Baltimore, Maryland; Golden First Bank, Great

12

Neck, New York; and Triad Capital, New York, New York.

83.     Plaintiff lost many additional business opportunities as a result of Defendants'
refusal to respond adequately to the SBA's requests, including with Anuva News, New York, New
York; Kabab Factory, New York, New York (these two potential customers were referred to
Plaintiff by Defendant Bank); New Bank, Flushing, New York; Noabank, Atlanta, Georgia; and
Dry Clean USA, in southern Florida.

84.     As a direct result of Defendants' actions and inactions, Plaintiff's business has
suffered extensive damages in the form of lost profits as well as damage to its hard-earned business
reputation and goodwill.

85.     Once Plaintiff had deposited Plaintiff Funds with Defendant Bank, Defendant
Bank and the Chase Employees embarked on a course of unfair business practices, deceptive
practices and bad faith, instead of fulfilling its fiduciary duty towards the Plaintiff.

86.     While refusing to issue acceptable bank confirmation letters to the SBA for
Plaintiff, Defendant Bank, upon information and belief, continued to issue such letters for its Chase
SBIC's and for its other SBIC customers.


## AS AND FOR A FIRST CAUSE OF ACTION

### BREACH OF FIDUCIARY DUTY

87.     Paragraphs 1-86 above, inclusive, are hereby incorporated herein by reference.

88.     Plaintiff had a long-standing banking relationship with Defendant Bank.

89.     Plaintiff was a banking customer of Defendant Bank, with checking and savings
accounts held at Defendant Bank, during all relevant times herein.

90.     Defendant Bank, having opened the Unauthorized Account, and having moved $2

13

million of Plaintiff's funds into same, breached its fiduciary duty to Plaintiff.

91. Defendant Bank, as Plaintiff's banker and financial advisor, had an obligation to Defendant to respond to information requests regarding deposits.

92. Defendants Bank and its employees represented to Plaintiff that it would respond to information requests regarding deposits to SBA's satisfaction.

93. Defendants did not provide responses to the information requests to SBA's satisfaction.

94. Defendants ignored the SBA's requests for information relating to Plaintiff's deposits.

95. Defendants did not follow standard procedures from the SBA regarding deposits.

96. Plaintiff relied on Defendants' representations to its detriment.

97. Defendants' acts and inactions damaged Plaintiffs in an amount not less than $15,000,000.00.

## AS AND FOR A SECOND CAUSE OF ACTION

### <u>NEGLIGENCE</u>

98. Paragraphs 1-97 above, inclusive, are hereby incorporated herein by reference.

99. Defendants failed to exercise the ordinary and reasonable skill, ability and care that a banking institution provides to its customer.

100. Defendants owed a fiduciary duty to Plaintiff.

101. Defendants' acts and inactions were the proximate cause of Plaintiff's damages.

102. As a result of Defendants' negligence, Plaintiff was damaged in an amount of not less than $15,000,000.00.

14

## AS AND FOR A THIRD CAUSE OF ACTION

### GROSS NEGLIGENCE

103.    Paragraphs 1-102 above, inclusive, are hereby incorporated herein by reference.

104.    Defendants have been grossly negligent, reckless, and willful and wanton in their disregard for Plaintiff's rights.

105.    Defendants were grossly negligent in that Defendants opened the Unauthorized Accounts, withdrew funds from Plaintiff's authorized accounts, and made unauthorized transfers of Plaintiff's funds into the Unauthorized Accounts, which Unauthorized Accounts violated the SBA's rules and regulations for Qualifying Accounts.

106.    Defendants' acts and inactions were the proximate cause of Plaintiff's damages.

107.    As a result of Defendants' negligence, Plaintiff was damaged in an amount of not less than $15,000,000.00.

## AS AND FOR A FOURTH CAUSE OF ACTION

### BREACH OF CONTRACT

108.    Paragraphs 1-107 above, inclusive, are hereby incorporated herein by reference.

109.    In and around November 2007, Plaintiff opened up two deposit accounts with Defendant Bank.

110.    In connection with opening up the deposit accounts with Defendant Bank, Business Depository Resolutions were executed by Plaintiff.

111.    The form of Business Depository Resolution was on a form created by Defendant

Bank.

112.    The form of the Business Depository Resolution specifically states that Plaintiff was an SSBIC - Specialized Small Business Investment Company.

113.    The form of the Business Depository Resolution has a specific section entitled "Depository and Withdrawal Authorization" in which those individuals authorized to withdraw money are listed.

114.    Defendant Bank, without Plaintiff's proper authorization, opened unauthorized accounts in Plaintiff's name, and without Plaintiff's proper authorization, withdrew funds and transferred funds among such accounts.

115.    Chase Employees made certain promises to Plaintiff to provide satisfactory confirmation letters to SBA regarding its account balances, which promises form part of the contract between Plaintiff and Defendant Bank.

116.    Defendants also breached the implied covenant of good faith and fair dealing with the Plaintiff.

117.    Defendant bank breached its contract with Plaintiff causing Plaintiff severe damages not less than $15,000,000.00.


## AS AND FOR A FIFTH CAUSE OF ACTION

## VIOLATION OF 12 C.F.R. § 229.16, et seq.

118.    Paragraphs 1-117 above, inclusive, are hereby incorporated herein by reference.

119.    Defendants opening accounts in the Plaintiff's name without the authorization or knowledge of the Plaintiff.

120.    The Plaintiff received no disclosures with respect to the Unauthorized Account as

16

required by 12 C.F.R. § 229.16.

121.     As a result of Defendants' failures to provide the aforementioned disclosures, the
Plaintiff has caused to be damaged in an amount not less than $15,000,000.00.

122.     Pursuant to 12 C.F.R. § 229, the Plaintiff seeks all actual damages as well as such
statutory damages as the Court seems proper.

**AS AND FOR A SIXTH CAUSE OF ACTION**

<u>**FRAUD IN THE INDUCEMENT**</u>

123.     Paragraphs 1- 122 above, inclusive, are hereby incorporated herein by reference.

124.     Defendants, at the time Plaintiff opened the account with Defendant bank, had a
plan and scheme to manipulate Plaintiff's money for Defendant Bank's benefit.

125.     Defendants made various representations to Plaintiff solely to persuade Plaintiff
to open up new accounts with Defendant Bank.  These include representations that the accounts that
Plaintiff was opening were adequate for Plaintiff's needs as an SSBIC and that Defendants would
respond and fulfill the SBA requests.

126.     Defendant Bank knew at the time it made the representations to Plaintiff that
these representations were false and misleading.

127.     Defendant Bank knew at the time it made the representations to Plaintiff, that it
planned on manipulating Plaintiff's money for Defendant Bank's own benefit and to Plaintiff's
detriment.

128.     Plaintiff would not have opened up new accounts with Defendant Bank but for the
Defendant Bank's fraudulent misrepresentations.

129.     Plaintiff reasonably relied on the representations made by Defendants.

130.     Defendants, as a result of their fraudulent representations have damaged Plaintiff

17

in a sum of not less than $15,000,000.00.

## AS AND FOR A SEVENTH CAUSE OF ACTION

## CONVERSION

131.     Paragraphs 1-130 above, inclusive, are hereby incorporated herein by reference.

132.     Defendants, without the Plaintiff's knowledge opened the Unauthorized Account and, without Plaintiff's authorization, transferred the Plaintiff's monies to the Unauthorized Account.

133.     Plaintiffs demanded that Defendants return the monies from the Unauthorized Account to the Plaintiff's New Accounts.

134.     Defendants refused to return the monies from the Unauthorized Account to Plaintiff's New Accounts.

135.     Defendants, as a result of their conversion, have damaged in a sum of not less than $15,000,000.00.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the entry of a judgment from this Court:

a.     An order to Defendant Bank to issue a bank confirmation letter to the SBA confirming Plaintiff's deposit of three million one hundred thousand dollars ($3,100,000) of capital in language that complies with the SBA's requirements, using either the SBA Language or the Alternative Language used by the Defendant Bank in the bank confirmation letters it uses for its Chase SBIC's and for its other customers that are SBICs.

b. On the First, Second, Third Fourth, Fifth, Sixth and Seventh Causes of Action a sum of not less

than $15,000,000.00;

c. Punitive damages in an amount to be determined at the time of trial;

d. On the Fifth Cause of Action, rescission of the contract; and

e. Awarding Plaintiff such other and further relief as this Court may deem to be just and proper.

Dated:    New York, New York
          May 20, 2009

By: _____
          Robert L. Rimberg
          GOLDBERG & RIMBERG PLLC
          115 Broadway, 3rd Floor
          New York, NY 10006
          (212) 697-3250

STATE OF NEW YORK     )
                      )ss..:
COUNTY OF KINGS)

I, Zindel Zelmanovitch, verify the following to be true under penalties of perjury:

I am president of  EAST COAST VENTURE CAPITAL, INC.  I have read the foregoing

Amended Complaint and know the contents thereof, and that the same is true to my knowledge

except as to the matters therein alleged upon information and belief and that as to those matters I

believe them to be true.

_____
Zindel Zelmanovitch

Sworn to before me this
____ day of May, 2009

_____
Notary Public

FREDRICK SCHULMAN
Notary Public, State of New York
No. 02SC4704709
Qualified in Westchester County
Certificate Filed in Westchester County
Commission Expires 10/31/97
                                    09

Index No.: 600410/09

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

X------------------------------------------------------------------------X

EAST COAST VENTURE CAPITAL INC.,

Plaintiff,

-against-

JP MORGAN CHASE BANK N.A. and
JAMES ASARO

Defendants.

X------------------------------------------------------------------------X

**AMENDED COMPLAINT**

**GOLDBERG & RIMBERG, PLLC**
Attorneys for Plaintiff
115 Broadway, Suite 302
New York, New York 10006
(212) 697-3250